Good morning, Your Honors. I'm David Boone. I represent Anthony Gould in this appeal. Go ahead. Try to keep your voice up, please, Counselor. Okay. I'm sorry. We hear a lot in the media nowadays about the sanctity of contract where people who bankrupted their employers somehow are protected by contracts entitled to million dollar bonuses. What I think is appropriate here today is that this Court addressed the sanctions, because that's all the little guy has left in this little meltdown. He's lost his home, job reduced hours, reduced pay. And so the exemptions provided under the bankruptcy code are all they have for a fresh start in life and to support their family. Well, now, what we have here, as I understand it, is the difference between a refund and an overpayment. Do I understand that correctly? I don't think that's true, Your Honor. I think that's a red herring. It's a nonsense argument. The overpayment is the debtor's money. And I think that's one thing that's different in this case than other set-off cases. But what did he list? Well, Your Honor, he listed the refund because the IRS called it a refund in the underlying court action. Only on appeal was the word overpayment ever mentioned. If they called it an overpayment, we would have exempted an overpayment. I've been doing this for 30 years. I never heard the IRS call it an overpayment. I understand that that's now in the Lungo case, et cetera, that's now an argument they're making. But the problem is that unlike other set-off cases, the money the IRS has belongs to the debtor. It's not the money the IRS owes the debtor. The debtor also still owes the IRS. Yes. But let's address this. You've got two items in play. But not for the same. And Congress has passed, allows the IRS to offset. No. No, that's not what happens. The code provides that under Section A that they may offset against certain other taxes. But otherwise, an overpayment, okay, past that discretionary point, it always goes to the student loans, child support, et cetera, and then it becomes a refund. It's the debtor's money up here, and here's the net debtor's money that's a refund. Now, in the real world, each year of the taxpayers decided individually. And in some years, the debtor owes money to the IRS, and in other years, they're entitled to a refund. And that's what happened in this case. The IRS said the debtor's entitled to be paid a refund in these two years, and we exempted them. Now, what the IRS overpayment argument is, is that somehow, let's say a year that the debtors owed money back from the IRS owed his money back from the IRS, that that's an egg. And then in the year where he owes the IRS, that the IRS went hungry. So the overpayment argument is that the IRS gets to take all the eggs and make an omelet and eat until it's not hungry. And if there's anything left over, that that's a refund to the debtor. The problem with that is that gives the IRS special status, which the Whiting Pools case said, U.S. Supreme Court says they're not different than any other creditor. And remember, we're talking about the IRS as a general unsecured creditor, just like a credit card, when it comes to the year in question. The other thing is, that flies in the face of Your Honor's own Isley decision, where your decision said that property income tax refunds are exemptible property and belong to the debtor. Let me. If we were outside of bankruptcy, there's no question that the IRS could offset, correct? No, no. They don't offset. What they do is they issue a refund letter for that year to the debtor. And I look at hundreds of these every year. And then the next letter the debtor gets is the IRS collection process intercepted the refund and applied it to another year. And generally, the IRS collection procedure will apply it to the year, the oldest year that they have on record. That's not a traditional offset? No. That's the collection, IRS collection process. I mean, they send this little magazine to every debtor they claim owes them money that explains that collection process. So. But this is kind of a netting out. Are we stuck with specific descriptions in the code as to these terms? No. Is this a timing issue? I think overpayment versus refund is a contrivance. The overpayment was the debtor's property. The net payment, the net refund and the overpayment are the same numbers in this case. And it's by the year. Call it what you would. We exempted a specific year, money owed to the debtor as a refund or overpayment. And that exemption was allowed. Now hear what happens, how this really gets to be a goofy situation if you follow the IRS argument. I just want to be sure I'm focusing on the right thing. The BAP held that the refund was not exempt property. Right. But the BAP was completely lost. And why they made that decision, I have no idea. Well, you better have some idea, otherwise we're going to have to affirm. Well, they made it an error on every single point. And so help us. What was the error? The error is that they refuted the court of appeals decision in Eiseley that a tax refund can be exempt property and said, no, it's not exempt. It's not exempt until the IRS exhausts all of its available machinations to take the debtor's property. Now let's go through the facts of the case. The debtor filed a plan, claimed exemptions, filed all his tax returns. Without having filed his income tax returns. No, he filed all the tax returns and then he filed the exemptions. At first he claimed the exemptions, then he filed his returns. Yes. And we had the exemptions were final. It was all about the same time. That's not a significant difference. The exemptions were properly claimed on the proper tax years. Well, you can't – you don't know whether there's any overpayment or refund or anything else until you have the income tax. Yeah, but they got – the IRS, the service got them. We filed them directly. With the IRS. So all this happens at the same time. Remember, they have an objection to confirmation pending. But when you filed your claim for a refund, though, the IRS didn't know that a refund was due and owing, correct? I'm sorry. I didn't hear you. When you filed your claim of exemption for a refund, for the refund, or for a refund, the IRS at that time didn't know that, in fact, a refund was due and owing. Is that right? But they have an objection to confirmation. So we filed the returns. No, no, no. Just answer my question. When you filed the claim of exemption for the refund, it was unknown under IRS law. I mean, you know, they didn't know that a refund was due and owing. Well, that's not true because we filed the tax returns. Well, on May 26th. We claimed the refund. What was the date of your Schedule C, amended Schedule C? May 26, 2005? I don't have that. That's what the BAP says. All right. May 26, 2005. And it wasn't until June or July of 2005 that you filed your tax returns for 1999 to 2004. I think that they were filed part of that, but that was when the IRS processed them. Well, BAP says it was filed in June or July of 2005. Right. And they had a claim on file that greatly exceeded the amount that the debtor owed. But they're not going to know whether there's an offset until they take a look at the tax returns that are filed later than the Schedule C, right? Okay. But they have an objection to confirmation. Well, but... And they routinely file unassessed claims like they did in this case that have amazing numbers, sometimes hundreds of thousands of dollars, to protect themselves from these situations. So what happened is the IRS amended their claim in accordance with our claimed exemptions, and then they withdrew their claim, their objection to confirmation, and the plan was confirmed. And this is local IRS counsel. They appear all the time. We work through hundreds of these cases a year. So it was essentially resolved. And there's a confirmed plan that says that these taxes in controversy are paid 0 percent, along with general unsecured creditors like the credit cards. All right. So then the setoff action is really an end-around attempt by the IRS to collect taxes that are otherwise going to get paid 0 percent. Well, the BAP said, the BAP quotes 6402A as, in the case of any overpayment. And that's what you're claiming, right, an overpayment? No, I'm claiming that the overpayment by overpayment slash refund, whatever it is, it's the debtor's money. It's the same amount. But you're claiming an overpayment. For that year, yes. All right. In the case of any overpayment, the secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person. Did the BAP get that wrong? Yes, they did, because that's not what the IRS did. They didn't activate their discretionary right to set off or to take that money for other taxes under A. They went ahead and processed the debtor's tax returns and came up with a refund amount. And that refund amount, the agreed amount, was the same amount we claimed exempt. And then later on, after the exemptions are final, the plan confirmation is final, they make a motion for relief, which they were required to make because the bankruptcy was pending. We don't have any right to do setoff. Particularly under the old law, they had to make a motion for relief before they could setoff. Well, I still think that's the case. Is your argument consistent with the Luongo case? Yes. The Luongo case is the one where the debtor is generally only entitled to a tax refund to the extent that her overpayment exceeds her unpaid tax liability. Right. I don't see how what you say coincides with the Luongo case. I think Judge Weisbrot discussed the distinction there in the Luongo case, and his decision is quite lengthy. But the Luongo case is the one where after the discharge, they setoff, where they intercepted a refund in a Chapter 7 case, and then the debtor came back, tried to reopen his Chapter 7, file new exemptions. It's completely different from this case. This is a Chapter 13. The stay was always in effect. Chapter 13 cases pay secured creditors. They pay priority creditors. They pay unsecured creditors some kind of dividend, in this case zero. But a Chapter 7 case doesn't affect secured creditors and doesn't deal with priority claims. So you think the BAP just completely dropped the ball when it found a difference between tax overpayment and tax refund? I think it's a red herring. And if we were going to discuss overpayment versus refund, we should have done it in the trial court, because if you called it an overpayment, it would have exempted the overpayment. And from now on, I guess I need to say exemption, refund, slash overpayment, because the characterization is it's the same money. It's always the debtor's money. It's not money owed by the IRS to the debtor. It's money that belongs to the debtor that the IRS is holding. Counsel, you're down about two minutes. Maybe we should hear from the service and then you have a chance to rebut. Thank you. Good morning. May it please the Court. Randolph Hutter for the United States. The Court has not addressed the issue of mootness or equitable mootness. If you have no questions on that issue, I'll move on to the setoff issue very well. Contrary to my esteemed opponent, the United States feels that there is little or nothing that we can add to the BAP's opinion. It decides the issues in this case correctly. The BAP's opinion with regard to the setoff shows exactly why the Bankruptcy Court's opinion is wrong. Both this Court in De Laurentiis and the Supreme Court in Strumpf, both of which are cited in our brief, have said that Section 553 of the Bankruptcy Code preserves a creditor's right of setoff, quote, notwithstanding any other provision of the Bankruptcy Code. Therefore, the right of setoff that the IRS has outside of bankruptcy is enforceable. The Bankruptcy Court itself came to the conclusion, this is on page 145 of the appendix, it is undisputed that but for debtor's bankruptcy filing, the IRS would be able to exercise its right under IRC Section 6402A to apply the refunds in this case to debtor's unpaid tax liabilities. How the Bankruptcy Court got off track from that finding, I will not know because that sums it up right there. The IRS had the right outside of bankruptcy. 553 preserves the right outside of bankruptcy. Therefore, the exemption provisions do not apply. Luongo says this. Other cases have followed Luongo. One case only in Kentucky did not follow Luongo. There is no other contrary precedent. Is that Shattergate? Which case is that that doesn't follow? Short, I believe it's called. I forget. It's cited in their brief, and we have it in a footnote. I believe it's on page 35 or 36 of our brief. And that case is a little sharp. I'm sorry, SHARP. That case is a little different in a way because it deals with earned income credit, in particular state law provisions that exempt certain property from levy and collection. And I'm not sure that that's directly on point anyway. But there's the Luongo case. There's the Pickett case. There's the other two or three bankruptcy cases that follow this exactly the same way. And I think that those cases are correct. Under 553, the IRS was entitled to apply a set-off under section 6402 of the Internal Revenue Code, and the debtor's claimed exemption of a tax refund was ineffective. Let me ask you. So as I understand what happened here, filed this claim of exemption for the refund. Yes. There was no objection filed. To the exemption. That's correct. The plan gets settled. Yes. The plan was confirmed ultimately. Confirmed. Yes. The correct word, confirmed. And then you guys come along afterwards. We interposed our motion to lift the set-off. Right. Lift the stay before the confirmation. Let me ask you, is that for the bankruptcy judge, is that a question of discretion or must he grant? Technically, under the law, a set-off is a matter of the judge's discretion. To lift the stay. Oh, yes, yes. It is also, I believe, a matter of discretion to lift the stay. Yes. So did he have any discretion here? Well, he technically had discretion and he abused it. And that's because he misunderstood the right of the law. Because he didn't understand that 553 on its term says that set-off rights. This Court has said the primacy of set-offs is essential to the equitable treatment of creditors. This Court said that in De Laurentiis. The Bankruptcy Court got into technical machinations and timing, whether exemption was claimed before set-off. That's not the way it works. And the BAP completely said things right, saying that that doesn't work. The hierarchy of the law is what controls. And 553 controls. And therefore, a set-off can happen even if you've exempted the property already. Well, then, in response to Mr. Boone's concern, it wouldn't have made any difference if he listed overpayment rather than refund. No, I don't think that would have. In the government's view. No, Your Honor. I don't think that would have made any difference at all. Because the judge, the bankruptcy judge, cannot deny the Secretary's discretion under 6402 to apply that overpayment as the Secretary wishes. Yes, 6402 says it's the Secretary's discretion. But the bankruptcy judge cannot say, and therefore I'm not letting you exercise that discretion. The BAP says that 553 always trumps 522. Do you think that's correct? Yes, I do. It doesn't necessarily have to be considered in this case. So that's dicta? Yes. I don't think it's essential to the holding. Is it wrong? No, it's not wrong. I hesitate to say in this case, yes, Your Honor. It always trumps 522 because always is a broad term and this case is this case. But it certainly trumps it here because the set-off law trumps anything in bankruptcy. And it says that the set-offs do apply. The BAP was also correct in holding that the debtor was not entitled to relief on equitable grounds. The IRS acted properly throughout the proceeding, and the public policy does not favor the debtor's rights here. And as I said before, De Laurentiis says that the primacy of set-offs is essential to the equitable treatment of creditors. So he could have still denied the or he could have upheld the exemption based on the equitable considerations. He could have. In Cascade Roads the Court did, for example. In Cascade Roads the Court found that the United States had acted very badly in prolonging litigation. I'm not sure that even that would have overcome 6402 because I don't think 6402 was at issue in Cascade Roads. What do you think he would have had to have shown here? See, there you do have a very, very difficult conflict issue. I mean, suppose if the money had been in the plan, it had been sort of considered to be used to help pay the debts. Yes, yes. You think that would have been enough? I still believe that 6402 would take it out of the realm of the Bankruptcy Court's jurisdiction to say to the Secretary that he or she cannot apply the overstatement to the overpayment, excuse me, to prior liabilities before determining that there was a refund. I believe that 6402 still would come first. The new amendments to 362, meaning 362B26, appear to allow the IRS to act without seeking to lift the automatic stay. Is that right? Yes, that's exactly right. Does that sort of trump a lot of the stuff that we're talking about in this case? It doesn't take a – I think that even if that were true, the Bankruptcy Court might have decided things the same way that it did. The IRS would have applied the set-off, would not have applied for the automatic stay, and the debtor would have then filed an objection. Try to reel it into the Bankruptcy Court. Exactly. And the Bankruptcy Court probably would have still said, you exempted the property before the IRS did the set-off. Therefore, I don't think that the discretion in lifting the stay had nearly as much to do with the Bankruptcy Court's decision as its belief that the exemption statute trumped 553. So even if the IRS can act outside, they're going to get pulled back in is the practical meaning of all of this. I'm sorry? Even though the IRS doesn't have to go in anymore to seek a lifting of the automatic stay, they're going to get reeled back into the Bankruptcy Court anyway in a situation like this. Well, they may if the Bankruptcy Court's decision were followed. Yes, exactly, exactly. If the Court has no other questions, I... Thank you, Counsel. Thank you very much. Mr. Boone, you have some reserved time. Thank you, Your Honor. My response to Counsel's remarks would be that in these types of cases, 522 should always trump 553 when the purported set-off is being done against property of the debtor. So you see it the other way around. That the... 522 trumps... Yes. ...when? Because in these cases, it's not like the De Laurentiis or these other cases where these two people have a contract, you owe me, I owe you. This is, the IRS is holding the debtor's property. And they're trying to use that to pay some other debt. And the debtor wants to exempt that property. It's part of his fresh start. And the debtor's holding the IRS property. No. That's not true. The debtor owes a tax liability for a dischargeable year. That's what this is. It's a dischargeable tax year that they're trying to set off against his recent priority tax overpayment refund. Is it clear that that other tax is dischargeable? Yes. That's always the case where we have this controversy. They're trying to take a very old year that's a general unsecured debt, just like a credit card, and they're using their own self-help remedy to pay that year. And then the debtor, of course, is going to pay any priority tax owed in the plan, which is what this debtor did. The small amount of priority tax he owed, he did pay in the plan and received a discharge. So I think there's a big difference between a normal commercial relationship set off and a case where they threw their own, you know, gratuitous withholding cables and self-help levying, get money in their possession and not through a normal judicial process that belongs to the debtor. That all depends if we agree with your reading of 6402. Well, you know, they came up with a refund for that year. And the discretion that they had under 6402A, they didn't use it. Let me address very quickly the mootness. I think this case is moot. Didn't object to the objection, exemptions. Then they made a determination of the tax liability on a year-by-year basis. Are you talking about the appeal is moot, counsel? Yes. Well, then you lose. Because the only thing that was before the trial judge was a motion for relief from stay to set off funds in their possession. And here's what they did. But if it's moot, the BAP decision survives, does it not? No. It was moot before it got to the BAP. I think that the BAP was irritated that it wasn't properly before them and that somehow this screw-up by IRS personnel had removed the issue. What happened is after the Weisbrod original decision, the IRS voluntarily returned the funds that were claimed exempt to the debtor. Okay? And now since that time, the debtors completed the plan, obtained a discharge, and it was, what, we were July 07. So if giving the money back was the nails in this coffin, the completion of the plan, the discharge, and it's been more than a year, so you couldn't even overturn this plan or discharge if there was actual fraud. So I think this coffin's been, you know, the hole's dug, the coffin's underground, the dirt's there, and there's lawn and flowers growing on this. It's moot. This is over. This is silly for this to be before Your Honors. All right. Counsel, your time has expired. Thank you very much. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Paez